EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
:
SHERMAN GOTTLIEB,                                      :
:
                Plaintiff,             :
:
      - against -                             :   04-CV-4202 (ILG) (VVP)
:
CARNIVAL CORPORATION,                                  :
:
                Defendant.             :
-------------------------------------------------------X

## DECLARATION OF FREDERICK STEIN
## IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT AND IN
## SUPPORT OF CARNIVAL CORPORATION'S
## <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Frederick Stein declares the following, pursuant to 28 U.S.C. § 1746:

1.    I am Director, Agency Compensation, for Carnival Cruise Lines, a division of Carnival Corporation ("Carnival"). I began working for Carnival in 1992, and have held my current position since approximately 2001. In my capacity as Director I am responsible for, among other things, overseeing compensation paid to Carnival's North American travel agents and maintaining Carnival's travel agent database, which stores profile information for each of Carnival's registered agents, including name, address, telephone and facsimile numbers, e-mail and other contact information. My department also monitors the sales performance of Carnival's registered agents and field staff.

2.    I am familiar with this matter and make this Declaration in opposition to the motion for summary judgment filed by Plaintiff Sherman Gottlieb, and in support of Carnival's cross-motion for summary judgment. This Declaration is based upon my personal knowledge and review of the books and records that Carnival maintains in the ordinary course of business.

3.      Mr. Gottlieb is a registered travel agent for Carnival. He began his business relationship with Carnival in March of 1999, when a travel agency profile at Carnival was first created for SMG Travel, the trade name by which Mr. Gottlieb apparently conducts his travel agency business. SMG Travel's "Agency History," maintained in the ordinary course of business by my department and produced in this litigation as CARN 000001 (Ex. A), displays that SMG Travel's agency profile was created on March 8, 1999. I note here that the column headed "Explanation" to the far right of Exhibit A was created by me after this lawsuit was filed, in an effort to explain the posted entries. My remarks, which are in bold, were added to and were not part of the original Agency History maintained by Carnival prior to initiation of this lawsuit.

4.      At the time SMG Travel's agency profile was created, Mr. Gottlieb provided Carnival with his contact information, including his fax number, 718-370-1620. Carnival would not have obtained SMG Travel's fax number by other means and without Mr. Gottlieb's consent. While Carnival has not been able to retrieve a copy of the exact form of agency agreement in use at the time SMG Travel first became a registered agent, a form similar in substance to it has been produced in this litigation as CARN 000032 (Ex. B).

5.      Following registration and creation of an agency profile, it is Carnival's practice to forward promotional material to its agents to inform them of cruises available for booking by the travel agent's customers. The purpose of forwarding such material to our travel agents is not to sell cruises to them but, rather, to keep them informed of available cruise schedules and rates and thus enhance their ability to book passengers on such cruises, to the mutual benefit of Carnival and the agents, who receive percentage commissions on sales. During all relevant times in this litigation, namely 1999 through 2003, transmission of such promotional material to

Carnival's travel agents was done primarily by facsimile; in recent years the material is more often than not delivered to Carnival's registered agents through e-mail.

6. Consistent with Carnival's practice, Carnival began faxing promotional material to SMG Travel beginning in or about 1999, for its use in potentially booking passengers on Carnival cruises.

7. Carnival has an Agency Profile Desk ("APD") that handles oral and written requests from travel agents to stop the transmission of promotional material. Telephone requests to the APD are processed by entering the requested change on the agent's profile and recording it in the agent history (e.g., Ex. A), which is stored on Carnival's mainframe computer. Calls received by other departments are memorialized in an e-mail and sent to the APD for processing. Requests sent from an agent by fax or e-mail (or other writing) are processed and stored in an Outlook program maintained on Carnival's computers. In short, any request by an agent to stop faxing of promotional material results in a change to the agent's profile.

8. It is my understanding that Mr. Gottlieb has stated that in late 2000 and early 2001, he called and faxed Carnival on several occasions requesting that Carnival stop faxing promotional material to SMG Travel. Under established procedures as described above, had Mr. Gottlieb called or written to Carnival requesting that his travel agency not be sent fax transmissions of promotional material, the APD would have made an annotation in SMG Travel's agency profile changing the "Fax Promo" indicator to "N" for "no." In that case, Carnival's agency profile for SMG travel, maintained on Carnival's computers, would so indicate. No such entry was ever recorded or appears in SMG Travel's Agency Profile.

9. Moreover, Carnival has conducted a thorough search of its records and no record

- 3 -

of any such request (oral or written) from Mr. Gottlieb has been found. It is Carnival's practice to maintain a copy of any written communication from a travel agent to cease transmissions of promotional materials for the four-year period specified in Carnival's document retention policy, so any fax communication from Mr. Gottlieb to the above effect would have been maintained for at least the retention period.

10. It is my understanding that Mr. Gottlieb has stated that, in early 2001, he faxed several requests to Carnival to stop faxing promotional materials, although the only alleged written communication of such a request produced by Mr. Gottlieb in this case is a letter, dated and supposedly sent on or about March 22, 2001, and identified as SMG 0971. When this lawsuit was commenced in September 2004, I personally conducted a search of Carnival's records to determine whether there were any written requests from Mr. Gottlieb asking that Carnival stop faxing promotional material. Insofar as late 2000 and early 2001 in general, and March 22, 2001 specifically, were still within Carnival's four-year document retention period as of September 2004, any written requests from Mr. Gottlieb received by Carnival during that time period ordinarily would have been in Carnival's files.

11. No copy of the document which Mr. Gottlieb has produced in this litigation, identified as SMG 0971, or any other written request to stop sending faxes, has been found in Carnival's files and Carnival has no record of SMG 0971 (or any similar document) having been received or processed. SMG Travel's Agency Profile does not indicate that the Fax Promo indicator was ever turned off in response to a request by Mr. Gottlieb, as it would have been under established procedures. In sum, Carnival has no record of receiving any oral or written request from Mr. Gottlieb that Carnival stop faxing promotional material to SMG Travel.

12.     Carnival's records indicate that from March 1999 to April 2003, SMG Travel made reservations on approximately three or four occasions, either directly with Carnival or through Cruise Value Center, a cruise consolidator service used by SMG Travel. On April 22, 2003, however, SMG Travel's agency profile was placed on "inactive" status due to an overall lack of activity. Pursuant to established procedure, when the agency profile for SMG Travel was placed on inactive status, SMG Travel's fax number was removed from Carnival's active database and the Fax Promo indicator for SMG Travel was changed to "No," indicating that SMG Travel was no longer to be sent promotional material. (See Ex. A.). Subsequent to that date, no further promotional material was faxed to SMG Travel.

13.     On February 5, 2004, Mr. Gottlieb attempted to book a reservation. Because SMG Travel's account had been placed on inactive status the previous year, Carnival required that Mr. Gottlieb complete a new agency agreement. In that agreement, executed by Mr. Gottlieb and returned to Carnival the same day (Ex. C), Mr. Gottlieb expressly agreed to receive faxes from Carnival at the same fax number, 718-370-1620, which he again provided to Carnival. The Agency History records the re-activation of SMG Travel as a registered Carnival travel agent as of February 5, 2004.

14.     It is my understanding that Mr. Gottlieb points to the fact that the Fax Promo indicator was not turned on after reactivation on February 5, 2004, as evidence that Carnival was aware that he did not wish to receive promotional faxes. That is not the case. Ordinarily, under the circumstances described above, and in the absence of a recorded request from Mr. Gottlieb indicating that promotional faxes should not be sent, the Fax Promo indicator would have been turned back on upon reactivation. Since there is no record of any such oral or written request

- 5 -

having been received from Mr. Gottlieb, it would appear that the failure to turn the Fax Promo indicator back on at reactivation was an oversight on the part of the staff person who processed SMG Travel's reactivation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2007.

_____
Frederick Stein